UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ANTONIO R. ADAMS,<br>　　　　*Plaintiff,*<br><br>　　v.<br><br>CARLOS DEL TORO, SECRETARY OF<br>THE NAVY,<br>　　　　*Defendant.* | No. 1:24-cv-00655-MSN-WEF |

**MEMORANDUM OPINION AND ORDER**

After more than a decade of administrative proceedings in the U.S. Navy, Plaintiff filed suit in this Court seeking review under the Administrative Procedure Act ("APA") of a decision by the Board for Correction of Naval Records ("BCNR" or "Board"). The Court is in receipt of the administrative record in the matter, and before the Court are the Parties' motions for summary judgment. Because Plaintiff has not identified any APA-cognizable error in the Board's decision, and any such error would be harmless, this Court will not disturb the Board's decision, and grant summary judgment in favor of Defendant.

**I.　BACKGROUND**

**　A.　Plaintiff's 2013 Calculus Courses**

Plaintiff enlisted in active-duty service in the Navy in March 2004. AR 1844-46.[1] In 2011, he enrolled in the Seaman to Admiral-21 program with the Naval Reserve Officers Training Corp ("NROTC") Unit at San Diego State University. AR 986. The program provides a path to commissioning after a person completes relevant educational requirements and is deemed

---

[1] Citations to the Administrative Record, ECF Nos. 9-13, are indicated with "AR." The Court limits its review of the facts to the Administrative Record, and "[a]s such, there can be no genuine issue of material fact." *Shipbuilders Council of Am. v. U.S. Dept. of Homeland Sec.*, 770 F. Supp. 2d 793, 802 (E.D. Va. 2011).

otherwise qualified based on his or her "academic qualifications, aptitude for commissioned service (officer like qualities), and general ability." AR 971.

By the end of the Spring 2013 semester, Plaintiff had completed all relevant academic requirements except that of obtaining "a 'C' or better in Calculus II at his host institution SDSU." AR 1483. That requirement mandated that officer candidates complete a Calculus II course in an in-person classroom setting taught by a live professor. AR 197, 1448-49. Deviation from these mandates, including that the Calculus II class be in-person, required advance approval. AR 196.

For Fall 2013, Plaintiff registered for two Calculus II classes, an in-person class at SDSU and an online class at National University. AR 1470, 1128, 1345. Plaintiff was informed that the National University class was online, but he would need to participate from an on-site math lab in California. AR 1524.

On November 26, 2013, Students graduating from the NROTC program in November 13 were asked to have their current professors fill and sign a grades memorandum and sign up for counseling. AR 1152. Plaintiff signed up for counseling and met with an advisor on December 20, 2013, but he had not yet provided his grades and was told he needed to do so as soon as possible. AR 1151. Plaintiff informed the program that he was "confident" he would earn a C or better. AR 1470.

Despite not satisfying his academic requirements on or before December 21, 2013, Plaintiff was allowed to attend and participate in the commissioning ceremony held that day. AR 1466. Plaintiff signed an acknowledgement that his participation and recitation of the oath would be ceremonial only, and that his commission remained contingent on his meeting the applicable requirements. AR 1466.

On December 23, 2013, Plaintiff provided his Calculus II grades to his academic advisor, indicating he received a "D" in the SDSU course and an "A" in the National University course.[2] AR 1151. He further indicated that on December 16, 2013, SDSU "transferred in and accepted" the credits from the National University course. AR 1635, 1637. At that point, an instructor began a preliminary inquiry to determine whether the National University course met the program's standards. AR 521. Plaintiff provided a syllabus for the course as part of the inquiry, but that syllabus differed from the one that Plaintiff's National University professor provided as part of the inquiry. AR 1142-47, 1149-50. Plaintiff made a statement claiming he "took the Calculus II class at National University in a classroom setting with the professor present in the room and did the homework online." AR 1128. The professor, however, confirmed as part of the investigation that the class was taught online. AR 1140-41.

Based on this preliminary inquiry, the Commanding Officer in charge of the SDSU NROTC program determined that Plaintiff did not meet the commissioning requirement, and further found that his "failure to include [the National University] course on [his] Degree Completion Plan kept [his] Academic Advisor" from understanding that he intended to meet the criteria with the online course. AR 1350.

B.     **Administrative Proceedings Against Plaintiff**

After the preliminary investigation concluded, Plaintiff's Commanding Officer initiated charges against him under the Uniform Code of Military Justice. AR 1451, 1514-16. Plaintiff waived his rights to trial by court-martial and accepted non-judicial punishment ("NJP"). AR 1500-13. The NJP proceeding was held on February 12, 2014, and Plaintiff was found guilty of failure to obey a lawful order and of a false statement. AR 1514-16. The first charge involved his

---

[2] Plaintiff ultimately received a "C" in the SDSU course after the professor upgraded his grade. AR 9.

failure to submit a grade memorandum after ordered to by his academic advisor on November 26, 2013, and the second involved his statement that the National University calculus course was in person with the professor in the classroom. AR 1514. Plaintiff received a letter of reprimand and reduction in grade because of the NJP proceeding and stated that he would not appeal the decision. ASR 1591, 1942, 1946.

On February 15, 2014, the Navy convened a three-member Performance Review Board ("PRB") to consider Plaintiff's performance as a student in the program. AR 1552. Two days before the proceeding, Plaintiff wrote a voluntary statement saying he was guilty of lying and not following an order and apologizing for his conduct. AR 1523. The PRB voted 3-0 in favor of disenrollment from the NROTC program. AR 1482-90.

On May 11, 2018, Plaintiff petitioned the BCNR for review of the 2014 PRB decision, arguing that it was infected with procedural errors, including the fact that one of the PRB's members was the officer who conducted the preliminary investigation into Plaintiff. AR 1310-11. The Board sustained this argument and, on July 8, 2019, ordered NROTC to convene a new PRB. AR 1311. The second PRB convened on May 13, 2020, and voted to affirm the original recommendation of disenrollment. AR 990-91. The NROTC Commanding Officer disenrolled Plaintiff from the program effective December 30, 2020. AR 982-83.

Plaintiff again petitioned the BCNR for review of the PRB's decision, but the BCNR denied relief on April 29, 2022. AR 785-90.

C.     **2023 Lawsuit and Subsequent BCNR Decision**

On April 20, 2023, Plaintiff filed an action in this Court seeking review of the BCNR's 2022 decision under the APA. *Adams v. Del Toro*, 1:23-cv-00535-PTG-IDD, ECF 1 (E.D. Va. Apr. 20, 2023). After Plaintiff filed for summary judgment, the parties conferred and agreed to

4

remand of the case to the BCNR for issuance of a new written decision addressing Plaintiff's arguments. 1:23-cv-00535-PTG-IDD, ECF 20 (E.D. Va. Aug. 7, 2023).

On remand, the BCNR issued a new written decision affirming the PRB's decision to disenroll him from the NROTC program. AR 1-18. The Board determined that he was not entitled to become a commissioned officer because even if he arguably completed the academic requirements, he was never found to be "in all other respects qualified." AR 9-10. The Board also determined that Plaintiff did not become an officer by participating in the December 21, 2013, ceremony, because he acknowledged in writing that the oath he executed was not official. AR 10. The Board also found no procedural error or injustice in the NJP given Plaintiff's waivers of trial rights, and that the evidence supported the charges on which he was found guilty. AR 12. In particular, it determined that "even if there were some reason to question the sufficiency of the evidence," Plaintiff's written admission of guilt would suffice to uphold the finding. AR 12-13. The Board rejected Plaintiff's argument that his self-incriminating statements were made under duress as incredible. AR 15. Next, the Board determined that Plaintiff had not raised any meritorious challenges to his PRB, determining its findings were "not surprising given the weight of the evidence against [Plaintiff] and the relative weakness of [his] defense." AR 16.

In its opinion, the Board referred to Plaintiff's arguments in his briefs in his 2023 lawsuit, noting that they showed "continuing dishonesty about [the] matter" of his Calculus II coursework. AR 9.

D.     **2024 Lawsuit and Procedural History**

On April 22, 2024, Plaintiff filed his Complaint in this case, alleging that the BCNR relied on "perceived new false statements" in its decision, which was therefore "arbitrary and capricious," "unsupported by substantial evidence," and "not in accordance with the law and Navy

regulation." ECF 1 at 5-6. Defendant filed the Administrative Record on June 21, 2024. ECF 10-13. On July 27, 2024, Plaintiff filed his Motion for Summary Judgment (ECF 15), and Defendant filed his Motion for Summary Judgment on August 29, 2024 (ECF 19). The motions have been fully briefed and are now ripe for resolution.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In an APA action, judicial review is limited to the administrative record and there can be no genuine issue of material fact, and the role of the court is simply to resolve the legal questions presented. *Shipbuilders Council of Am. v. U.S. Dept. of Homeland Sec.*, 770 F. Supp. 2d 793, 802 (E.D. Va. 2011).

Courts review the decisions of a military corrections board "under an 'unusually deferential application of the 'arbitrary and capricious' standard' of the APA." *Roberts v. United States*, 741 F.3d 152, 158 (D.C. Cir. 2014) (quoting *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989)); *see also Downey v. United States Dept. of the Army*, 110 F. Supp 3d 676, 686 (E.D. Va. 2015) (same). Courts do not function as "a forum for appeals by every soldier dissatisfied with a military personnel action or decision, a result that would destabilize military command and take the judiciary far afield of its area of competence." *Downey*, 110 F. Supp. 3d at 687 (citing *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000)). In determining whether the Board acted arbitrarily and capriciously, "the court must consider whether [it] considered the relevant factors and whether a clear error of judgment was made." *Ohio Valley Envtl. Coal v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). Deference is appropriate where the Board has examined the relevant information and

articulated a "rational connection between the facts found and the choice made." *Id.* (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Even if a party seeking review of an agency decision identifies an error, "the harmless error rule requires [him] to demonstrate prejudice from the error." *Id.* (quoting *Friends of Iwo Jima v. Nat'l Capital Planning Comm'n*, 176 F.3d 768, 774 (4th Cir. 1999)). That is, he must demonstrate that "the outcome of the process would have differed" absent the agency's error. *Iwo Jima*, 176 F.3d at 774.

### III.   ANALYSIS

Plaintiff claims just a single deficiency in the Board's reasoning: that it relied on dishonest statements in his prior summary judgment briefs when it declined to reverse the NJP or PRB decisions. ECF 16 at 9-11. He argues that three of the Board's statements indicate its reliance on his dishonesty before this Court. The first is the Board's finding that his "continuing dishonesty about this matter even today, to both [the Board] and EDVA, validated the Navy's decision to deny [him] a commission in 2014." *Id.* at 10 (quoting AR 9). In the second, the Board wrote: "your mischaracterization and exaggeration of the relevance of this evidence did not enhance your credibility with the Board in this case where your credibility was of paramount importance." *Id.* (quoting AR 13). Third, Plaintiff cites the Board's finding that "as with your other exaggerations of the evidence discussed previously, this mischaracterization did not enhance your credibility." *Id.* at 11 (quoting AR 17). On Plaintiff's view, docking him for dishonest statements made in court filings was inappropriate and undermines the Board's decision because those were "statements made by counsel in argument on behalf of" him, and "not attributable to" him. *Id.* at 9.

From the outset, it is far from clear that each of the three statements Plaintiff points to actually refer to dishonesty in filings with this Court. While the first, which references his

7

"continuing dishonesty . . . before . . . EDVA," no doubt refers to Plaintiff's briefs, the other two are more naturally read to refer to his dishonesty before the BCNR or in other Naval proceedings. Indeed, the statement on page 13 of the BCNR's opinion that Plaintiff had "mischaracterize[ed] and exaggerate[ed]" comes directly after its discussion of Plaintiff's statements in a 2016 letter, not his Court filings. AR 13. And the statement on page 17, referencing Plaintiff's "other exaggerations of the evidence discussed previously," is simply a general reference to Plaintiff's history of dishonesty. AR 17.

But even accepting that each of these three statements focused on Plaintiff's filings in his prior case in this Court, doing so was not error. As a general rule, counsel's statements or actions in a civil case may be attributed to a party. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 396-397 (1993). The Fourth Circuit has repeatedly held that under the Federal Rules of Evidence, an attorney's statements regarding matters within the scope of her representation of her client may be introduced in court over a hearsay objection as an authorized statement or agent's statement. *United States v. Martin*, 773 F.2d 579, 583 (4th Cir. 1985); *United States v. Gregory*, 871 F.2d 1239, 1242-1243 (4th Cir. 1989). Plaintiff, on the other hand, notes *Martin*'s statement that "an attorney's admission of criminal liability" is not "admissible against the client." 773 F.2d at 583; *see* ECF 23 at 2. But that is beside the point where, as here, the statements at issue "do[] not rise to that level," and Plaintiff's counsel "was authorized to make, on [his] behalf, any statements concerning the subject matter." *Martin*, 773 F.2d at 583 (citing Restatement of Agency 2d § 286 (1958)). Plaintiff has therefore failed to show that the Board committed legal error or acted arbitrarily and capriciously to the extent that it found his statements in briefs before this Court to evidence a continuing pattern of dishonesty.

In the alternative, Plaintiff has not shown that any claimed error was prejudicial. He argues that "the BCNR placed significant weight on its attribution of counsel's arguments to [P]laintiff's character," claiming that the "language the BCNR used is very strong, repeated three times in three sections, and demonstrates its disdain for the Plaintiff more so than the remainder of the points it raises in the decision." ECF 23 at 3. But the decision itself tells a different story. The Board carefully considered the history of Plaintiff's case, determined that the NJP and second PRB decisions were correct, and articulated a rational connection between the facts and its decision. After considering all the facts, it determined that "[t]he evidence clearly supports the charges for which [Plaintiff was] found guilty at NJP," relying first and foremost on Plaintiff's own admission of guilt. AR 12. And the Board's reasons for upholding the PRB decision were premised primarily on procedural and evidentiary issues, not on Plaintiff's dishonesty. AR 15-17. Even omitting those statements with which Plaintiff takes issue, the Board would plainly have reached the same conclusion and upheld the challenged actions. Plaintiff's unsubstantiated argument that the statements were of "critical importance" to the decision lacks merit. *See* ECF 23 at 3.

### IV.   CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment (ECF 15) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Motion for Summary Judgment (ECF 19) is **DENIED**.

The Clerk is directed to enter judgment in favor of Defendant in accordance with Rule 58.

**SO ORDERED.**

/s/
Hon. Michael S. Nachmanoff
United States District Judge

February 13, 2025
Alexandria, Virginia